Mr. Justice Miller
dissenting:
I cannot agree to the opinion of the court just delivered in an important- matter; and I regret this the more because I do agree to the proposition that the proviso to the act of July 12, 1870, is unconstitutional, so far as it attempts to prescribe to-the judiciary the effect to be given to an act of pardon or amnesty by the President.
This power of pardon is confided to the President by the *253 'Constitution, and whatever may be its extent or its limits, the legislative branch of the Government cannot impair its force or effect in a judicial proceeding in a constitutional court.
But I have not been able to bring my mind to concur in the proposition that, under the act concerning captured and abandoned property, there remains in the former owner, who had given aid and comfort to the rebellion, any interest whatever in the property or its proceeds when it had been sold and paid into the Treasury or liad been converted to the use of the public under that act.
I must construe this act, as all others should be construed, by seeking the intention of its framers; and the intention to restore the proceeds of such property to the loyal citizen and to transfer it absolutely to the Government in the case of those who had given active support to the rebellion, ¡is to me too apparent to be disregarded.
In the one cáse the Government is converted into a trustee for the former owner; in the other it appropriates it to its own use as the property of a public enemy captured in war.
Can it be inferred from anything found in the statute that Congress intended that this property should ever be restored to the disloyal ?
I am unable to discern any such intent. But if it did, why was not some provision made by which the title of the Government could at some time be made perfect, or that of the owner established! Some judicial proceeding for confiscation would seem to be necessary if there remains in the disloyal owner any right or interest whatever. But there is no such provision, and unless the act intended to forfeit absolutely the right of the disloyal owner, the proceeds remain in a condition where' the owner cannot maintain a suit for its recovery, and the United States can obtain no perfect title to it.
This statute has recently received the attentive consideration of the court in two reported cases.
In the case of The United States v. Anderson, (9 Wallace, 65,) in reference to the relation of the Government to the money paid into the Treasury’' under this act, and the difference between the property of the loyal and disloyal owner, the court uses language hardly consistent with the opinion just read. It says that Congress, in a spirit of liberality, constituted the Government a trustee for so much of this property as belonged to the *254 faithful southern, people, and while it directed that all of it should be sold and its proceeds paid into the Treasury, gave to this class of persons an opportunity to establish their right to-the proceeds. Again, it is said, that “ the measure, in itself of great beneficence, was practically important only in its application to the loyal southern people, and sympathy for their situation doubtless prompted Congress to pass it.” These views had the unanimous concurrence of the court. If I understand the present opinion, however, it maintains .that the Government, in taking possession of this property and selling it,, became the trustee of all the former owners, whether 103ml or disloyal, and holds it for the latter until pardoned b3r the President, or until Congress orders it to be restored to him.
The other case which I refer to is that of United States v. Padelford, (9 Wallace, 531.) In that case the opinion makes a labored and successful effort to show that Padelford, the owner-of the property, had secured the benefit of the amnesty proclamation before the property was seized under the same statute we are now considering.
And it bases the right of Padelford to recover its proceeds in the Treasury on the fact that before the capture his stahis as a loyal citizen had been restored, and with it all his rights of property, although he had previousljr given aid and comfort to the rebellion. In this view I concurred with all 1113’- brethren. And I hold now that as long as the possession or title of property remains in the party, the pardon or the amnesty remits, all right in the Government to forfeit or confiscate it. But where the propert3r has already been seized and sold, and the-proceeds paid into the Treasury, and it is clear that the statute contemplates no further proceeding as necessary to divest the right of the former owner, the pardon does not and cannot restore that which has thus completely passed away. And if such was not the view of the court when Padelford’s case was under consideration I am at a loss to discover a reason for the extended argument in that case, in the opinion of the court, to show, that he had availed himself of the amnesty' before the seizure of the property. If the" views now advanced are sound, it was wholly immaterial whether Padelford was pardoned before or after the seizure.
Mr. Justice Bradley concurred with Justice Miller.